UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **Tawanna Oglesby**, | No. 2:20-cv-00346-WHR |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION** |
| **Fedex Ground Package System, Inc.**, | |
| Defendant. | |

Plaintiff, Tawanna Oglesby, ("Plaintiff"), and Opt-In Plaintiff, Daria Venable (collectively, Plaintiff and Opt-In Plaintiff Daria Venable are referred to as "Plaintiffs"), seek to conditionally certify a collective action pursuant to Section 216(b) of the Fair Labor Standards ("FLSA") consisting of all persons who have worked or who are working for FedEx Ground Package System, Inc. ("FedEx" or "FedEx Ground") as "Small Vehicle Drivers," or similar job titles or duties for FedEx,[1] in the State of Ohio, at any time during the three years preceding the filing of this action (the "Collective Members"). Through this lawsuit, Plaintiffs seek to recover unpaid overtime wages for themselves and the Collective Members under the collective action mechanism of the Fair Labor Standards Act, 29 U.S.C. § 216(b).

FedEx in recent years has shifted to a model across the country in which it employs many (if not most) of its drivers through "Independent Service Providers" or "Service Providers" (both also referred to herein as "ISPs") so that FedEx can disclaim any employment relationship with –

---

[1] For this motion, Plaintiffs refer to the positions at issue as "Small Vehicle Drivers" or the "Covered Positions." The term "Small Vehicle Drivers" refers to any individual who worked for any subcontracted service provider of FedEx Ground Package System, Inc. as a driver, and who drove a vehicle weighing 10,000 pounds or less in at least one workweek.

-1-

or wage-related obligations to – their drivers.[2] These drivers, however, typically work full-time and exclusively for FedEx, picking up and delivering FedEx packages while wearing FedEx branded uniforms, driving FedEx branded vehicles and being supervised by FedEx managers, regardless of which ISP they worked under.

Plaintiff brought this action against FedEx on behalf of herself and all other Small Vehicle Drivers who have delivered packages for FedEx through intermediary ISPs, and who have been eligible to receive overtime pay but have not been paid time-and-a-half compensation for time worked in excess of 40 hours per workweek, in violation of the FLSA. In collective actions brought under the FLSA, an employee's statute of limitations will continue to run and will only commence "when, and only when, his [or her] written consent to become a party plaintiff to the action is filed in the court in which the action was brought." 29 U.S.C. § 257. As a result of this distinction, expedited notice to potential opt-in plaintiffs is essential to ensure timely assertion of putative class members' rights.

This motion seeks permission to send the current and former Small Vehicle Drivers notice under 29 U.S.C. § 216(b) informing them of their right to join this case and allowing them to decide whether to seek their unpaid overtime wages. Conditional certification of this lawsuit as a collective action and resulting notice to potential plaintiffs is essential because each day that notice does not go to potential plaintiffs, it constitutes another day that has been lost under the FLSA's

---

[2] FedEx previously hired delivery drivers directly pursuant to "independent contractor" agreements. However, after "numerous class actions [were] filed throughout the country against FedEx by current and former drivers" who alleged "they [were] employees, rather than independent contractors" under FedEx's standard operating agreement, *Craig v. FedEx Ground Package System, Inc.*, 335 P.3d 66 (Kan. 2014) (holding that FedEx drivers in Kansas were FedEx employees as a matter of law), and after many courts found that FedEx was its drivers' employer, FedEx began rolling out a new nationwide policy in which FedEx requires anyone desiring to work as a FedEx delivery driver to be hired and paid by intermediary entities called "ISPs."

statute of limitations. Courts apply a lenient standard at this stage and routinely order conditional certification of a collective action for this very reason.

Although the parties have not conducted merits-based discovery, through Plaintiff's declaration attached hereto as "**Exhibit A**," Opt-In Plaintiff Daria Venable's declaration attached hereto as "**Exhibit B**," deposition testimony of corporate representative(s) of FedEx pursuant to Fed. R. Civ. P. 30(b)(6) attached hereto as "**Exhibit C**," and the detailed allegations in the Complaint, Plaintiffs demonstrate that FedEx's current and former Small Vehicle Drivers are similarly situated with respect to FedEx's payroll policies and practices of failing to pay Plaintiffs and the Collective Members the required time and a half overtime premium for hours worked in excess of 40 hours per week. Plaintiffs have thus provided more than the "substantial allegations" necessary to satisfy the lenient standard for conditionally certifying a collecting action and authorizing notice.

## I. STATEMENT OF FACTS

Plaintiffs worked as delivery drivers to deliver packages for FedEx and did not get paid overtime for time they worked in excess of 40 hours per week.

FedEx contracts with third-party Service Providers ("ISPs") to provide package delivery services within the State of Ohio. Ex. C, at 35:12-14. Two of the entities that Plaintiff worked for directly – Giacherio Inc. and Fast Ball Trucking, Inc. – contracted to provide FedEx with drivers to deliver those packages. Ex. A, at ¶¶ 7-9. Plaintiff worked directly for Giacherio Inc. to provide package delivery services for FedEx from approximately 2016 to October 11, 2019. *Id.* at ¶ 8. Plaintiff worked directly for Fast Ball Trucking, Inc. to provide package delivery services for FedEx from approximately October 12, 2019, to June 22, 2020. *Id.* at ¶ 9. Like Plaintiff, Opt-In Plaintiff Daria Venable worked as a driver for multiple ISPs under the FedEx umbrella during her

more than six years as a FedEx driver. Ex. B, at ¶¶ 7-9. As shown below, the evolution of FedEx's business model is a decades-long exercise in attempting to subvert the FLSA's overtime requirements through subcontracting.

**A.  FedEx's Previous Model for Avoiding Liability as its Drivers' Employer**

Until about 2010, FedEx hired all of its delivery drivers pursuant to standard-form "operating agreements" that purported to label each driver as an "independent contractor" of FedEx. *See Craig*, 335 P.3d at 71-72. "[N]umerous class actions [were] filed throughout the country against FedEx by current and former drivers" who alleged "they [were] employees, rather than independent contractors" under FedEx's standard operating agreements. *Id.* at 71.

Many courts agreed with the drivers, reasoning that the drivers who delivered FedEx's packages worked full-time for FedEx according to FedEx's detailed procedures, wore FedEx's uniforms and drove vehicles bearing FedEx's logos and color schemes, and were completely dependent on FedEx for all of their delivery work. *See, e.g., Estrada v. FedEx Ground*, C.A. No. BC-210130 (Ca. Super. Ct. July 26, 2004) (Attached as "**Exhibit D**") at pp. 4, 16 (FedEx had "close to absolute control" over its drivers, and furthermore "[i]f 'lightning' were to strike so that there would be no [FedEx Ground], there would in fact be nothing left for the [drivers] to do and they suddenly would be total bereft of business."), *aff'd* 154 Cal.App.4th 1 (2007) ("FedEx's control over every exquisite detail of the drivers' performance, including the color of their socks and the style of their hair, supports the trial court's conclusion that the drivers are employees, not independent contractors," as well as the fact that "[t]he customers [drivers served] are FedEx's customers, not the drivers' customers."); *Slayment v. FexEx Ground Package System, Inc.*, 765 F.3d 1033, 1044 (9th Cir. 2014) (FedEx drivers in Oregon were FedEx employees "as a matter of economic reality" because "FedEx drivers are a permanent and important part of [FedEx's]

business," FedEx controlled the manner in which the drivers performed their work, and the drivers worked full time for FedEx while being "overseen by FedEx employed managers…"); *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014) (FedEx misclassified its California delivery drivers as independent contractors based on FedEx's right to control the drivers' work and the drivers' complete dependence on FedEx for all of their work); *Craig*, 335 P.3d at 8-93 ("It would seem that one would be hard pressed to say that the FedEx delivery drivers were not, as a matter of economic reality, dependent upon FedEx's delivery business."); *cf. Carlson v. FedEx Ground Package System, Inc.*, 787 F.3d 1313, 1316 (11th Cir. 2015) (reversing grant of summary judgment in FedEx's favor, finding a triable dispute of fact existed over whether FedEx delivery drivers in Florida were FedEx employees under Florida state law). In 2016, FedEx agreed to pay approximately $500 million to settle dozens of the class actions that had been filed against it for misclassifying its drivers around the country as independent contractors.[3]

B. **FedEx's Current Model and Effort to Avoid Liability as an Employer**

As courts around the country began to see through FedEx's manufactured fiction of labeling its drivers as "independent contractors," FedEx responded by adding a layer of separation – at least on paper – between itself and the delivery drivers who perform its deliveries using what it calls an "Independent Service Provider" (ISP) model. *See* FedEx Corporation, SEC Form 10-K (2016), attached as "**Exhibit E**," at p. 18 (explaining the history of litigation against FedEx under

---

[3] *See, e.g., Alexander v FedEx Ground Package System, Inc.*, C.A. No. 05-38 (N.D. Ca. June 17, 2016) (settling California-wide claims for $228 million); *In re MDL-1700 FedEx Ground Package System, Inc., Employ. Prac. Litig. No. II*, C.A. No 05-527 (N.D. Ind. Mar. 15, 2017) (settling 19 class actions against FedEx for $240 million); *Carlson v. FedEx Ground Package System, Inc.*, C.A. No. 05-1380 (M.D. Fla. July 15, 2017) (approving a $13 million settlement for Florida FedEx drivers); *Slayman v. FedEx Ground Package System, Inc.*, C.A. No. 05-1127 (D. Or. Oct. 21, 2016) (approving a $15.5 million settlement for Oregon FedEx Drivers); *Gennell v. FedEx Ground Package System, Inc.*, C.A. No. 05-145 (D.N.H. Dec. 30, 2014) (approving $8.7 million settlement of New Hampshire FedEx drivers' class actions claims).

its old business model, and its transition to the ISP model; "[t]o date, service providers in 24 states are operating under, or transitioning to, the ISP agreement. The transition…in the remaining 26 states is expected to be completed by 2020."). Instead of requiring its drivers to sign an independent contract "operating agreement" with FedEx, FedEx has required drivers to either (1) form a corporation and hire other drivers as the corporation's employees to perform deliveries along FedEx's routes pursuant to an ISP agreement with FedEx, or (2) become an employee of another ISP entity to perform FedEx deliveries. *See* FedEx Ground, "Contracting Standards," attached as "**Exhibit F**" (FedEx Ground contracts only with businesses that are established…as for-profit corporations…."); *Gennell v. FedEx Ground*, 2013 WL 4854362, at *7 fn. 5 (D.N.H. Sept. 10, 2013) ("under the new model, FedEx contracts with ISPs who act as corporate entities and employers (i.e., 'John Smith, Inc.'). The contractors hire…employees to meet [FedEx's] service objectives"). However, the drivers' day-to-day delivery work, FedEx's control over that work, and the drivers' reliance upon FedEx for all of their work, has remained unchanged regardless of which ISP they are paid by. *See generally* Ex. A, Ex. B.

Plaintiffs and other individuals similarly situated have worked typically five or more days, and frequently more than 50 hours per week, delivering packages exclusively for FedEx out of FedEx terminals across the state of Ohio just as FedEx drivers have done for years, while wearing mandatory FedEx uniforms. Ex. C, at 38:3-39:7 (listing Cambridge, Canton, Chillicothe, Cincinnati, Columbus, Etna, Grove City, Groveport, Lebanon, Mansfield, Miamisburg, North Judson, Perrysburg, Plain City, Richfield, South Point, Twinsburg, and Vandalia as locations of

FedEx Ground terminals in Ohio).[4] Indeed, there are approximately 162 ISPs under the FedEx Ground umbrella directly employing FedEx drivers. Ex. C, at 40:2-4.

Plaintiffs, and drivers similarly situated, have worked workweeks during which they have used vehicles that are under 10,001 pounds gross vehicle weight. Ex. A, at ¶¶ 4-5; Ex. B, at ¶¶ 4-5. Regardless of which terminal drivers work at, and regardless of which ISP paid them for their work, Plaintiffs and those similarly situated all perform the same duties subject to FedEx's same rules and procedures. *See generally* Ex. A; Ex. B. Indeed, Plaintiffs personally witnessed hundreds of individuals, working for between 15 and 20 different ISPs, working out of the same terminal, regardless of which ISP they worked for. Ex. A, at ¶¶ 11, 24; Ex. B, at ¶¶ 12, 23.

As shown in Plaintiffs' declarations, drivers who work for FedEx, but through ISPs, arrive at their assigned FedEx terminals each morning, usually between 8:00 a.m. and 9:00 a.m., by which time a group of package handlers employed by FedEx at each terminal will have already or nearly sorted and assigned a full day's worth of packages to each driver. Ex. A, at ¶¶ 4-5, 16-18; Ex. B, at ¶¶ 4-5, 16-18. Drivers do not have any discretion regarding the number of packages they are assigned each day. Ex. A, at ¶ 20; Ex. B, at ¶ 20. It is ultimately up to FedEx to decide how many packages they must deliver every day. Ex. A, at ¶ 20; Ex. B, at ¶ 20.

FedEx requires each driver to make deliveries using a special type of scanner that FedEx stores in its terminal overnight and distributes to the drivers each morning. Ex. A, at ¶¶ 21-22; Ex. B, at ¶¶ 21-22. While on the road delivering packages for FedEx, FedEx requires the drivers to scan each package upon delivery, and to enter one of FedEx's special codes on the scanner to designate how each delivery was made (for example, one of the special codes on the scanner

---

[4] The vast majority of drivers use vehicles that have FedEx's logo and color scheme. Ex. A, at ¶ 27; Ex. B, at ¶ 26.

indicates that the driver left the package at the customer's front door).  Ex. A, at ¶ 22; Ex. B, at ¶ 22.

If a customer has a complaint or other issue about their delivery, they do not contact the driver or the driver's ISP.  Ex. A, at ¶ 30; Ex. B, at ¶ 29.  Instead, they call FedEx's 1-800 number, and FedEx ensures that the issue is resolved with the ISP and the driver.  Ex. A, at ¶ 30; Ex. B, at ¶ 29.  Sometimes, FedEx employees at the terminal will call the drivers while they are out on the road making deliveries to give them additional delivery instructions, such as to deliver a package to a different address.  Ex. A, at ¶ 23.

Although Plaintiffs and other similarly situated drivers who have worked through ISPs have regularly worked more than 40 hours per week delivering packages for FedEx, they have not received overtime pay.  Ex. A, at ¶¶ 12-14; Ex. B, at ¶ 13-15.

## II.     LEGAL ARGUMENT SUPPORTING CONDITIONAL CERTIFICATION

Plaintiff seeks conditional certification of his FLSA claim pursuant to 29 U.S.C. § 216(b). Plaintiff seeks certification of the following:

> **All current and former Small Vehicle Drivers (or other positions with similar job titles or job duties), who performed work for FedEx Ground Package System, Inc., whether directly or via an ISP, during the applicable statute of limitations (the "Collective Members") within the State of Ohio, and who were not compensated one and one-half times their regular rates of pay for time worked in excess of 40 hours in a given workweek.**

Based on this preliminary factual evidence, it is clear that there are other employees (both current and former) similarly situated to Plaintiff.  This motion does not involve an exhaustive review of the Small Vehicle Drivers' duties or of the factors that contribute to FedEx's status as a "joint employer" under the FLSA.  It simply involves the question of whether Plaintiff and other Collective Members are and were similarly situated in being forced to work overtime without proper compensation.

A.   **Purpose of FLSA Collective Actions and Court Supervised Notice.**

Under the FLSA, an action for unpaid overtime wages may be maintained "by any one or more employees" individually, and on behalf of any other employees who are "similarly situated." 29 U.S.C. § 216(b). Unlike a traditional Rule 23 class, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The opt-in collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs and decreasing the burden on the courts, through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

This distinct "opt-in" structure of § 216(b) also heightens the need for employees to "receiv[e] accurate and timely notice concerning the pendency of the collective action." *Id.* Because each employee's statute of limitations continues to run until the filing of his or her written consent, it is imperative that a motion for conditional certification be filed and decided early in litigation, prior to a determination of the case on the merits. *See, e.g.*, *Kalish v. High Tech. Inst.*, No. 04-cv-1440 (JRT/JSM), 2005 WL 1073645, at *3 & n.1 (D. Minn. Apr. 22, 2005) (*citing Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)).

B.   **Plaintiff Meets the Lenient Standard for Conditional Certification.**

FedEx would like to have the Court believe that its subcontracting routine absolves it of all wage and hour liability and instead put the onus on the ISPs to ensure compliance with applicable wage laws. However, because FedEx retains control over the day-to-day job duties and functions of its drivers, it cannot escape liability as its Small Vehicle Drivers' employer under the FLSA.

Neither the FLSA nor the Sixth Circuit have explicitly defined the term "similarly situated." Nevertheless, FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Brodzenski v. Stonemor Partners, L.P.*, 1:14-cv-2517 (N.D. Ohio, May 28, 2015), citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

The Southern and Northern Districts of Ohio, the Sixth Circuit, and courts across the nation have developed a two-stage approach to collective actions. *E.g. Id*. The first stage is a notice stage and occurs prior to discovery. Before conditional certification at the notice stage, a plaintiff must make a "modest factual showing" and need "only that his position is similar, not identical, to the positions held by the putative class members." *Jackson v. Papa John's USA, Inc.*, 1:08-CV-2791 (N.D. Ohio Feb. 13, 2009) (internal citations omitted). At the notice stage, the Plaintiffs' burden is only to "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Id*. "Because a district court has limited evidence at this stage, this standard is 'fairly lenient,' and 'typically results in 'conditional certification' of a representative class.'" *Kis v. Covelli Enterprises, Inc.*, 4:18-cv-54, 4:18-cv-434 (N.D. Ohio, May, 16, 2018). Under the two-tiered approach,

> during the early stages of litigation, the Court evaluates the case under a lenient standard and may grant conditional certification. If the Court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery. The Court then reevaluates, usually prompted by a motion for decertification, the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. This determination, under a stricter standard, is based on much more information, which makes a factual determination possible.

*Juvera v. Salcido*, 294 F.R.D. 516, 519–20 (D. Ariz. 2013) (internal citations omitted).

At the notice stage of an FLSA collective action, "all that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. Arizona*, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993).

"Given that a motion for conditional certification usually comes before much, if any discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage." *Schiller v. Rite of Passage, Inc.*, 2014 WL 644565, at *3 (D. Ariz. Feb. 19, 2014). The Court makes its determination based on the pleadings and any declarations that have been submitted. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

Indeed, as shown above, FedEx instituted a company-wide misclassification practice to deprive Plaintiff and other Small Vehicle Drivers of overtime compensation. Instead of classifying the Small Vehicle Drivers as employees and paying them hourly, FedEx attempted to improperly subcontract out the responsibility to pay them legal wages. The economic reality, however, shows that FedEx retained sufficient control over the drivers to have been their employers under the FLSA. In turn, FedEx neglected its responsibility to ensure that their Small Vehicle Drivers were paid according to the FLSA's requirements. This misclassification only benefited FedEx so that it could save the cost of paying its employees overtime while simultaneously deflecting liability by subcontracting with its service providers.

Here, Plaintiffs easily exceed their modest evidentiary burden to establish that they are sufficiently similarly situated to fit within their unified theory of liability. FedEx's drivers are literally fungible to FedEx by design. FedEx subjects all of its drivers to company-wide policies

and procedures – which include requiring their drivers to work side-by-side en mass in their terminals. Ex. A, at ¶¶ 15-16; Ex. B, at ¶¶ 15-16. FedEx's company-wide policies also include requiring their Small Vehicle Drivers to adhere to schedules that FedEx set, to adhere to routes assigned to them by FedEx, to deliver packages assigned to them by FedEx, to use the scanners and special codes provided by FedEx to ensure each delivery comported with FedEx's set specifications. *See generally* Ex. A; Ex. B. Each Declaration offers evidence sufficient to exceed the minimum evidentiary threshold required for conditional certification.

   C.   **Merit Based Arguments are Premature During this Stage.**

FedEx may argue conditional certification is improper because Plaintiff and the potential Collective Members are not similarly situated. However, as courts have repeatedly recognized, the arguments that go to the merits of Plaintiff's claims are not yet ripe for resolution. *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio May 23, 2017) ("This Court, therefore, concludes that the motion for conditional class certification should be addressed before Huntington's defense on the merits is ripe"), quoting *Heaps v. Safelite Solutions, LLC*, 2011 WL 1325207, at *4 (S.D. Ohio April 5, 2011) (rejecting defendant's argument that conditional certification should be denied because defendant's policy was lawful because the argument "relates to the merits of this action and is not the relevant inquiry at this stage of the proceedings").

At this stage of conditional certification, the court "typically do[es] not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Osman v. Grube*, Case No. 1:16-cv-00802 (N.D. Ohio July 7, 2017). Only after discovery in the second stage of certification does the court "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.*

### III. PLAINTIFF'S PROPOSED NOTICE SHOULD BE APPROVED

#### A. Plaintiff's Proposed Notice is Accurate and Informative.

Judicially authorized notice of a collective action under § 216(b) must be "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Plaintiff's proposed notice achieves the goal of providing workers accurate and timely notice concerning the pendency of this action without taking sides on the merits. (See Proposed Notice and Consent Form, attached hereto as "**Exhibit G**"). Plaintiff's proposed court notice to the potential opt-ins is "timely, accurate, and informative," as required. *Id*. It informs the Collective Members of their right to opt-in to this litigation in a neutral manner, provides that this Court has yet to decide the merits of the dispute, and provides that FedEx cannot retaliate against them for asserting their rights.

#### B. The Court Should Approve Plaintiff's Plan for Notifying Potential Plaintiffs.

The Supreme Court has held that, to efficiently adjudicate an FLSA collective action, "district courts have discretion, in appropriate cases, to implement [FLSA § 16(b),] 29 U.S.C. § 216(b)[,]... by facilitating notice to potential plaintiffs." *Hoffmann-La Roche*, 493 U.S. at 170. "Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.* at 172. Generally, courts are vested with broad discretion in its governance of the notice and consent process. *Id.* at 171. In determining the proper notice and consent process, courts have noted that the broad remedial purpose of the FLSA by ensuring that "as many potential plaintiffs as possible [are informed] of the collective action and their right to opt-in[.]" *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *51 (S.D.N.Y. Sept. 20, 2013) (citations omitted).

Plaintiff requests only that potential collective action members receive notice by mail. Plaintiffs further request that such potential members be given sixty (60) days to opt-in to this

action. Plaintiff further requests that she be permitted to send potential members a reminder notice thirty (30) days into the opt-in period and that potential members be given the choice of opting in through regular mail or via the internet.

1. **Notice Method, Notice Period, and Opt-In Method**

Plaintiff requests that the Court authorize Notice in the form of: (1) mailing of the proposed Notice to the last known address of all potential opt-in plaintiffs, (2) emailing[5] of the proposed Notice to the last known email address of all potential opt-in plaintiffs, and (3) posting of the proposed Notice, by FedEx, in a conspicuous location in all its FedEx terminals until the opt-in period closes.

Plaintiff requests that potential Collective Members be given sixty (60) days to opt-in to this action. Plaintiff also proposes that notice be sent to the putative class members twice: the first time within seven days of receiving the list of putative class members and a second time halfway through the opt-in period, but only to those class members who have not joined at that time. A reminder Notice is important. Some potential FLSA opt-ins may not receive, open, or

---

[5] Email notice is a common form of notification in FLSA cases. *See, e.g.*, *Phels v. MC Comm'ns, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) (permitting email notice because it is an efficient, reasonable, and low-cost supplemental form of notice); *Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at *8 (N.D. Cal. Dec. 19, 2011) (permitting notice via email); *Goudie v. Cable Commc'ns, Inc.*, 2008 WL 4628394, at *9 (D. Or. Oct. 14, 2008) (permitting notice via email); *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) ("Plaintiffs have submitted ample authority indicating that federal district courts…frequently utilize e-mail to provide notice of collective actions"); *Pippins v. KPMG LLP*, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today…email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 3235628, at *3 n.3 (E.D.N.Y. July 27, 2011) (finding email to be "a relatively unobtrusive option" for providing notice); *Scales v. Info. Strategy Design Inc.*, No. CV-18-00087-PHX-DLR, 2018 WL 6727265, at *5 (D. Ariz. Dec. 21, 2018) ("So long as potential class members are provided with the notice via first-class mail, the Court sees no harm in supplementing that notice with an email."); *Chiang v. Thai Chili 2 Go, LLC*, 2020 WL 4515933, at *8 (D. Ariz. February 18, 2020);

review the initial notice. They may misplace it or forget about it. Sending either the entire Notice a second time, or alternatively, a short reminder notice with a consent form helps to ensure all persons interested in joining the action do so within the prescribed period. The number of late opt-ins is typically higher without a reminder Notice than with it. It reduces the Court's burden in deciding whether late opt-ins should be allowed to proceed with their colleagues or whether they should be dismissed, forcing them to file their own similar action(s) in the same Court, thereby creating duplicative litigation.

The Southern District of Ohio and other courts have recognized the importance of a reminder notice, and Plaintiff requests for it to be authorized here as well. *See, e.g.*, *Godsey v. Airstream, Inc.*, 2020 WL 502550, at *5 (S.D. Ohio Jan. 31, 2020); *Hamm v. S. Ohio Med. Ctr.*, 275 F.Supp.3d 863, 879 (S.D. Ohio 2017); *Curphey v. F&S Management I, LLC*, 2021 WL 487882, at *5 (D. Ariz. February 10, 2021); *Gee v Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010); *Ortiz-Alvarado v. Gomez*, No. CIV. 14-209 MJD/SER, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014); *Volz v. Provider Plus, Inc.,* No. 4:15CV0256 TCM, 2015 WL 4255614, at *4 (E.D. Mo. July 14, 2015); *Holliday v. J S Exp. Inc.,* No. 4:12CV01732 ERW, 2013 WL 2395333, at *10 (E.D. Mo. May 30, 2013).

### 2. Production of a List of Potential Collective Members

Finally, prompt disclosure of the names and contact information for the putative class members is necessary for Plaintiff to provide those individuals with notice of the action. *See Hoffmann-La Roche*, 493 U.S. at 170. "[D]istrict courts have routinely ordered the production of names and addresses of potential collective action members to plaintiffs' counsel." *Bados Madrid v. Peak Constr., Inc.*, 2009 WL 2983193, at *2 (D. Ariz. Sept. 17, 2009).

Plaintiff respectfully requests that, in addition to entering an order granting conditional certification and approving Plaintiff's Notice, the Court order FedEx to produce within seven days of its order, a list in electronic and importable format, of all Small Vehicle Drivers who worked for FedEx, or for a FedEx service provider, between August 18, 2017, and the date of the order, including: (1) their name, (2) mailing address, (3) email address, (4) employee identification number, if any, (5) last four digits of their social security number, and (6) dates of employment. All of the requested information is necessary to allow Plaintiff sufficient information to confirm current addresses and/or to locate those persons who may have moved.

## IV. CONCLUSION

At this preliminary stage, Plaintiff has come forward with sufficient factual bases from which this Court can determine that similarly situated plaintiffs exist. Thus, the Court should grant Plaintiff's Motion and provide the following relief to Plaintiff:

(1) Conditionally certify this case as a collective action with respect to the class definition as described above;

(2) Authorize the Opt-In procedure outlined above; and

(3) For any such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 23rd Day of September, 2022.

          LAW OFFICE OF MICHAEL L. FRADIN

          s/ *Michael L. Fradin*
          Michael L. Fradin, Esq.
          8401 Crawford Ave., Ste. 104
          Skokie, IL 60076
          Telephone: (847) 986-5889
          Fax: (847) 673-1228
          Email: mike@fradinlaw.com


          BENDAU & BENDAU PLLC

          By: /s/ *Clifford P. Bendau, II*
          Clifford P. Bendau, II (OH No. 0089601)
          BENDAU & BENDAU PLLC
          P.O. Box 97066
          Phoenix, Arizona 85060
          Telephone AZ: (480) 382-5176
          Email: cliffordbendau@bendaulaw.com
                  chris@bendaulaw.com

          SIMON LAW CO.

          By: /s/ *James L. Simon*
          James L. Simon (OH No. 0089483)
          5000 Rockside Rd., Suite 520
          Independence, OH 44131
          Telephone: (216) 816-8696
          Fax: (216) 642-5814
          Email: james@simonsayspay.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd Day of September, 2022, a copy of the foregoing was transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to all counsel of record via the CM/ECF system.


/s/ *Clifford P. Bendau, II*