IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TAWANNA OGLESBY | : | |
| Plaintiff, | | |
| | : | Case No.:  3:20-cv-00346-WHR-PBS |
| vs. | | |
| FEDEX GROUND PACKAGE SYSTEM, INC., and GIACHERIO, INC. | : | District Judge: Walter H. Rice |
| | : | Magistrate Judge: Peter B. Silvain, Jr. |
| Defendants. | : | |
| | : | |

---

## FEDEX GROUND'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

TABLE OF EXHIBITS ............................................................................................... vii

INTRODUCTION ........................................................................................................ 1

RELEVANT FACTUAL BACKGROUND ................................................................... 1

I.     FEDEX GROUND CONTRACTS WITH INDEPENDENT BUSINESSES TO PROVIDE PACKAGE PICKUP AND DELIVERY SERVICES IN OHIO ....................... 1

II.    PLAINTIFF'S CLAIMS AGAINST FEDEX GROUND ................................. 3

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................ 6

I.    PLAINTIFF IS NOT ENTITLED TO CONDITIONAL CERTIFICATION ........................ 6

     A.    Putative Class Members' Claims Are Not Unified by a Common FLSA-Violating Policy or a Common Theory of FLSA Violations ................................... 7

          1.    Plaintiff does not show, and the evidentiary record refutes, the existence of any commonly-applicable compensation policy. ................... 8

          2.    FedEx Ground's Service Provider business model does not provide a common theory of FLSA violations ......................................................... 10

     B.    Plaintiff Offers Insufficient Evidence of Alleged FLSA Violations to Justify the Issuance of Notice to Other Drivers ..................................... 15

          1.    Plaintiff does not present evidence of widespread overtime violations. ...................................................................................................... 15

          2.    Plaintiff lacks personal knowledge to substantiate her claims of other purported FedEx Ground policies .................................................... 17

     C.    Plaintiff's Proposed Collective Action Is Not Manageable ................................. 19

II.    PLAINTIFF'S PROPOSED FORM OF NOTICE AND PLAN FOR DISSEMINATION ARE IMPROPER AND UNWORKABLE .......................................... 22

     A.    The Proposed Collective Action Is Temporally Overbroad ................................. 22

     B.    Plaintiff's Plan for Immediate Dissemination of any Notice is Unworkable ....... 23

     C.    Plaintiff's Proposed Form of Notice and Consent Form Are Improper ............... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alexander v. FedEx Ground Package Sys.*,
   765 F.3d 981 (9th Cir. 2014) ................................................................. 3

*Alvarez v. Gold Belt, LLC*,
   No. CIV. 08-4871 NLH KMW, 2011 WL 1337457
   (D.N.J. Apr. 7, 2011) .......................................................................... 23

*Boyd v. Schwebel Baking Co.*,
   No. 4:15-CV-871, 2016 WL 3555351
   (N.D. Ohio June 30, 2016) .................................................................... 6

*Brooks v. A Rainaldi Plumbing, Inc.*,
   No. 606CV-631ORL-31DAB, 2006 WL 3544737
   (M.D. Fla. Dec. 8, 2006) ...................................................................... 10

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ............................................................................. 5

*Church v. The Pine Club, LLC*,
   No. 3:20-cv-135, 2021 WL 2980312
   (S.D. Ohio July 15, 2021) ........................................................ 5, 6, 7, 16

*Corley v. FedEx Ground Package Sys., Inc.*,
   No. 5:19-cv-00429ODWSHKX, 2022 WL 1805435
   (C.D. Cal. June 2, 2022) ....................................................................... 12

*Craig v. FedEx Ground Package Sys., Inc.*,
   335 P.3d 66 (Kan. 2014) ....................................................................... 3

*Creely v. HCR ManorCare, Inc.*,
   789 F. Supp. 2d 819
   (N.D. Ohio 2011) ................................................................................. 6

*Crescenzo v. O-Tex Pumping, LLC*,
   No. 15-cv-2851, 2016 WL 3277226
   (S.D. Ohio June 15, 2016) ................................................................... 23

*Emonds v. Amazon.com, Inc.*,
   No. C19-1613JLR, 2020 WL 5993908
   (W.D. Wash. Oct. 9, 2020) ........................................................... passim

*Estrada v. FedEx Ground Package Sys., Inc.*,
   64 Cal. Rptr. 3d 327 (Cal. App. 2007) ..................................................... 3

*Freeman v. Wal-Mart Stores, Inc.*,
  256 F. Supp. 2d 941
  (W.D. Ark. 2003) .................................................................................................. 20

*Frye v. Baptist Mem'l Hosp., Inc.*,
  495 F. App'x 669 (6th Cir. 2012) ........................................................................... 5

*Gallagher v. Gen. Motors. Co.*,
  No. 19-11836, 2020 WL 3481649
  (E.D. Mich. June 26, 2020) ......................................................................... 7, 19, 20

*Gibbs v. MLK Express Servs., LLC*,
  No. 2:18-cv-434FTMM38MRM, 2019 WL 2635746
  (M.D. Fla. June 27, 2019) .............................................................................. passim

*Godsey v. Airstream, Inc.*,
  3:19-cv-107, 2020 WL 502550
  (S.D. Ohio Jan. 31, 2020) ................................................................................... 6, 7

*Hall v. U.S. Cargo & Courier Serv., LLC*,
  299 F. Supp. 3d 888 (S.D. Ohio 2018) .................................................................. 6

*Hinds v. FedEx Ground Package Sys., Inc.*,
  No. 18-cv-01431-JSW, 2021 WL 4926980
  (N.D. Cal. Aug. 18, 2021) ........................................................................ 12, 13, 21

*Hodzic v. FedEx Ground Package Sys., Inc.*,
  No. CV 15-956, 2016 WL 6248078
  (W.D. Pa. Oct. 26, 2016) ...................................................................................... 17

*Hoffman-LaRoche Inc. v. Sperling*,
  493 U.S. 165 (1989) ......................................................................................... 19, 24

*In re FedEx Ground Package Sys., Inc. Emp. Pracs. Litig.*,
  273 F.R.D. 424 (N.D. Ind. 2008) ........................................................................... 3

*Johnson v. Ford Motor Co.*,
  13 F.4th 493 (6th Cir. 2021) ................................................................................. 18

*Lightfoot v. Wahoo Logistics, Inc.*,
  No. FCS050578 (Cal. Super. Ct. (Solano Cnty.) Feb. 2, 2022) ............................ 12

*Lockhart v. D&S Residential Servs., LP*,
  No. 2:18-cv-02586JPMCGC, 2020 WL 4717910
  (W.D. Tenn. Aug. 13, 2020) .............................................................................. 5, 19

*Martin v. Sprint/United Mgmt. Co.*,
  No. 15 Civ. 5237 (PAE), 2016 WL 30334
  (S.D.N.Y. Jan. 4, 2016).................................................................................... 5, 8

*Monroe v. FTS USA, LLC*,
  860 F.3d 389 (6th Cir. 2017) ...................................................................... 21

*Nelson v. FedEx Ground Package Sys., Inc.*,
  No. 18-cv-01378-RM-NYW, 2018 WL 6715897
  (D. Colo. Dec. 21, 2018)..................................................................... 7, 11, 14

*O'Brien v. Ed Donnelly Enters., Inc.*,
  575 F.3d 567 (6th Cir. 2009) ................................................................... 5, 11

*Ortiz v. Panera Bread Co.*,
  No. 1:10CV1424, 2011 WL 3353432
  (E.D. Va. Aug. 2, 2011)................................................................................. 22

*Overpeck v. FedEx Corp.*,
  No. 18-cv-07553-PJH, 2022 WL 888441
  (N.D. Cal. Mar. 25, 2022)...................................................................... 12, 21

*Pacheco v. Boar's Head Provisions Co.*,
  671 F. Supp. 2d 957
  (W.D. Mich. 2009)..................................................................................... 6, 16

*R & R adopted*,
  2019 WL 1437765
  (D. Colo. Feb. 8, 2019) .................................................................................. 7

*Rosales v. El Michoacana LLC*,
  No. 15-CV 711-FTM-38CM, 2016 WL 7093432
  (M.D. Fla. Oct. 20, 2016) ............................................................................... 7

*Roy v. FedEx Ground Package System, Inc.*,
  353 F. Supp. 3d 43 (D. Mass. 2018) ................................................... passim

*Sheffield v. Orius Corp.*,
  211 F.R.D. 411 (D. Or. 2002) ........................................................................ 8

*Sullivan-Blake v. FedEx Ground Package System, Inc.*,
  No. CV18-1698, 2019 WL 4750141
  (W.D. Pa. Sept. 30, 2019) ....................................................................... passim

*White v. MPW Indus. Servs., Inc.*,
  236 F.R.D. 363 (D. Mass. 2018)............................................................. 18, 19

*Xavier v. Belfor USA Grp., Inc.*,
   585 F. Supp. 2d 873 (E.D. La. 2008) ............................................................. 8

*York v. Velox Express, Inc.*,
   524 F. Supp. 3d 679 (W.D. Ky. 2021) ..................................................... 24, 25

*Zavala v. WalMart Stores, Inc.*,
   691 F.3d 527 (3d Cir. 2012) ................................................................. 5, 11

*Zavala v. Wal-Mart Stores, Inc.*,
   No. CIV.A. 03-5309 (GEB), 2010 WL 2652510
   (D.N.J. June 25, 2010), *aff'd*, 691 F.3d 527 (3d Cir. 2012) .................... 21

**STATUTES**

29 U.S.C. § 216 ................................................................................................. 4

**RULES**

Fed. R. Civ. P. 23 ....................................................................................... 12, 21

**REGULATIONS**

29 C.F.R. § 778.110 .......................................................................................... 9

29 C.F.R. § 778.111 .......................................................................................... 9

29 C.F.R. § 778.112 .......................................................................................... 9

29 C.F.R. § 778.113 ...................................................................................... 9, 10

29 C.F.R. § 778.114 .......................................................................................... 9

29 C.F.R. Part 778 ............................................................................................ 9

## TABLE OF EXHIBITS

| Pl.'s Exhibit | Document |
|---|---|
| A | Decl. of Pl. Tawanna Oglesby in Supp. of Pl.'s Mot. for Conditional Certification, ECF 63-1 ("Oglesby Decl.") |
| B | Decl. of Opt-In Pl. Daria Venable in Supp. of Pl.'s Mot. for Conditional Certification, ECF 63-2 ("Venable Decl.") |

| Def.'s Exhibit | Document |
|---|---|
| A | Deposition of Tawanna Oglesby ("Oglesby Dep.") |
| B | Deposition of Erin Randolph ("Randolph Dep.") |
| C | Declaration of Erin Randolph ("Randolph Decl.") |
| D | Declaration of Susan Kernen ("Kernen Decl.") |
| E | Declaration of Jessica G. Scott ("Scott Decl.") |
| F | Declaration of Brian Cowdery ("Cowdery Decl.") |
| G | Declaration of Vernell Williams ("Williams Decl.") |
| H | Declaration of Anthony B. Ferrante ("Ferrante Decl.") |
| I | Declaration of Albert Smith ("Smith Decl.") |
| J | Declaration of Carson Smart ("Smart Decl.") |
| K | Declaration of Kelley Ball ("Ball Decl.") |
| L | Comparison of Oglesby Declaration with Oglesby Deposition Testimony |

**INTRODUCTION**

Plaintiff seeks to conditionally certify a statewide collective of what could be hundreds of drivers who worked for roughly 160 different employers across Ohio and under different pay practices set by those employers. Her request should be denied. While Plaintiff alleges she and other drivers were denied overtime pay, she fails to present any unifying theory of these alleged FLSA violations—which admittedly occurred, if at all, at the hands of separate employers.

Plaintiff alleges she and members of the putative collective are similarly situated "with respect to FedEx's payroll policies and practices" of failing to pay overtime and in "being forced to work overtime without proper compensation." (Pl.'s Mot. for Conditional Cert. ("Mot.") 3, 8, ECF 63.) But in support of this claim, she offers just two cookie-cutter declarations regarding the "payroll policies and practices" of a few third-party entities—<u>not</u> any policies or practices of FedEx Ground. Neither declarant provides evidence of (or even identifies) <u>any</u> pertinent common policy or practice directed by FedEx Ground.

Plaintiff points to several FedEx Ground policies that allegedly, show FedEx Ground functions as all drivers' joint employer. (Mot. 11-12.) But a joint-employer theory does not justify conditional certification in the absence of some evidence that the putative collective is "similarly-situated with regard to the <u>alleged FLSA-violating behavior</u>" itself. *See, e.g.*, *Emonds v. Amazon.com, Inc.*, No. C19-1613JLR, 2020 WL 5993908, at *5 (W.D. Wash. Oct. 9, 2020) (emphasis added). Plaintiff offers no such evidence, and her motion should be denied.

**RELEVANT FACTUAL BACKGROUND**

**I. FEDEX GROUND CONTRACTS WITH INDEPENDENT BUSINESSES TO PROVIDE PACKAGE PICKUP AND DELIVERY SERVICES IN OHIO**

FedEx Ground is a federally-registered motor carrier that offers package pickup, delivery, and information services nationwide. Customers contract with FedEx Ground for package pickup

1

and delivery and for tracking information about where their packages are during shipment.
(Randolph Decl. ¶ 3.) FedEx Ground, in turn, contracts with thousands of independent businesses,
or "Service Providers," for package service between FedEx Ground stations and customers,
known as the "first" or "last mile" of pickups and deliveries. (*Id.*) In Ohio, FedEx Ground has 17
stations and contracts with 162 Service Providers. (Randolph Dep. 38:14-39:12, 39:21-40:4.)

Service Providers operate under a standard base agreement that gives them full discretion
to manage all aspects of their businesses as they see fit. (Randolph Decl. ¶¶ 9, 12.) Although the
base agreement is standard across Service Providers, many material terms are negotiated and set
out in addenda, riders, and schedules. (*Id.* ¶¶ 9-10.) For example, Service Providers decide whether
to participate in brand promotion programs to use FedEx Ground logos on their employees'
uniforms and on their vehicles. (Randolph Dep. 73:15-20.) If they choose not to participate, they
are under no obligation to have their employees in FedEx Ground logoed apparel. (*Id.*)

Service Providers agree to provide pickup and delivery services up to a certain volume
threshold and to provide FedEx Ground customers information about the pickup, delivery, and
transit of those packages. (Randolph Dep. 12:15-24,106:11-14.) Service Providers have the
contractual right to service the geographic region covered by their Agreements, and they design
and assign routes to their employees. (*Id.* 53:5-9, 65:7-14; Cowdery Decl. ¶ 10; Williams Decl.
¶ 13.) They also have "sole and complete discretion" over the selection, work schedules, and
compensation of their employees, as well as decisions about vehicles and other equipment.
(Randolph Decl. ¶ 12-13, 16-17.) FedEx Ground does not control or direct any Service Provider's
decisions on these matters. (*Id.*; Cowdery Decl. ¶ 4-5; Williams Decl. ¶ 7-8; Smart Decl. ¶ 6-7.)

Service Providers' operations vary significantly. Some are large operations with as many
as 100 drivers (among other employees), while others operate on a smaller scale. (Ferrante Decl.

¶ 5 (100 drivers); Cowdery Decl. ¶ 4 (67 drivers); Williams Decl. ¶ 5 (50 drivers); Smith Decl. ¶ 5 (20 drivers).) Some Service Providers provide services across several states. (Williams Decl. ¶ 6.) Some provide transportation services to entities other than FedEx Ground. (Ferrante Decl. ¶ 6.) And, significantly, compensation and benefits plans differ among (and within) Service Providers. (Ferrante Decl. ¶ 11; Cowdery Decl. ¶ 8; Williams Decl. ¶ 7; Smith Decl. ¶ 10.)

FedEx Ground's relationship with Service Providers differs significantly from its prior contracting model that was the subject of the misclassification cases to which Plaintiff refers. (*See* Mot. 4-5.) Those cases involved a now-extinct business model that used an obsolete agreement through which some <u>full-time drivers contracted directly with</u> FedEx Ground.[1] FedEx Ground's contracts with those driver-contractors have nothing to do with this case.

## II. PLAINTIFF'S CLAIMS AGAINST FEDEX GROUND

Plaintiff filed this action two years ago against FedEx Ground and her two Service Providers, Giacherio, Inc. and Fast Ball Trucking, seeking to recover allegedly unpaid overtime under the FLSA and Ohio law. (Compl., ECF 1.) After FedEx Ground moved for partial summary judgment on her claims, Plaintiff admitted she did not earn overtime pay when employed by Fast Ball and voluntarily dismissed it from this case. (*See* Notice of Dismissal, ECF 53; FedEx Ground's Mot. for Partial Summ. J. 4, ECF 11; Ball Decl. ¶¶ 4-5.)

Plaintiff requested and conducted limited discovery—including Plaintiff's deposition and

---

[1] *See, e.g.*, *Alexander v. FedEx Ground Package Sys.*, 765 F.3d 981, 984 (9th Cir. 2014) (class comprised of "full-time delivery drivers for FedEx in California between 2000 and 2007" who contracted with FedEx Ground); *In re FedEx Ground Package Sys., Inc. Emp. Pracs. Litig.*, 273 F.R.D. 424, 457 (N.D. Ind. 2008) (state MDL classes comprised of persons who entered into Operating Agreements with FedEx Ground and were full-time drivers); *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 72 (Kan. 2014) (class comprised of full-time drivers who contracted with FedEx Ground "from February 11, 1998, through October 15, 2007"); *Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327, 332-33 (Cal. App. 2007) (class limited to full-time drivers that contracted with FedEx Ground).

the Rule 30(b)(6) deposition of FedEx Ground—before moving for conditional certification. She now seeks to conditionally certify an FLSA collective action for all current and former drivers employed by Service Providers in Ohio who drove "small" (or light) vehicles (i.e., those weighing 10,000 pounds or less) and were not paid overtime by their Service Providers. (Mot. 8.)

Plaintiff offers two declarations—her own declaration and that of Daria Venable, a putative opt-in plaintiff—to support her motion.[2] Plaintiff attests that she worked for Giacherio and Fast Ball Trucking out of the Vandalia and Miamisburg Terminals. (Oglesby Decl. ¶¶ 3, 7.) Venable says she worked out of the same two terminals for three Service Providers: DNS, McVety, and Terron. (Venable Decl. ¶¶ 3, 7.) Both declare they "often" drove light vehicles, "typically worked 50 to 60 each week," and were paid a flat day rate without overtime by their respective Service Providers. (Oglesby Decl. ¶¶ 4-5, 12; Venable Decl. ¶¶ 4-5, 13.) They also state, in uniform terms, that FedEx Ground controlled their work in various ways. (Oglesby Decl. ¶¶ 18-27; Venable Decl. ¶¶ 18-26.) But the only specificity they provide is about one another. As to other drivers, Plaintiff and Venable offer scant (if any) details, saying only that they worked alongside "other," unidentified drivers who were employed and paid by Service Providers but were subject to the same means of FedEx Ground control, according to Plaintiff and Venable's observations, and who told Plaintiff and Venable that they were also paid a day rate without overtime. (Oglesby Decl. ¶¶ 11, 15-17; Venable Decl. ¶¶ 15-17.)

## LEGAL STANDARD

The FLSA permits a collective action only when the plaintiff and other complaining employees are "similarly situated." 29 U.S.C. § 216(b). Courts uniformly recognize that this

---

[2] Plaintiff attaches two additional documents as evidence that FedEx Ground contracts with Service Providers to provide first- and last-mile package pickup and delivery services. (Mot., Exs. E, F.) FedEx Ground does not dispute that it contracts with Service Providers.

4

requirement demands a factual nexus that binds the plaintiffs' claims together vis-à-vis the alleged FLSA violation.[3] Thus, employees "are similarly situated when they suffer from a single, FLSA-violating policy" or when their "claims [are] unified by common theories of [the] defendants' statutory violations. . . ." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). But employees are not similarly situated merely because they claim to have suffered the same FLSA violation, such as unpaid overtime. *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 673 (6th Cir. 2012) (finding that proof of "individual FLSA violations" among opt-in plaintiffs did not show they were "similarly situated plaintiffs [who] experience[ed] a common FLSA injury"); *Lockhart v. D&S Residential Servs., LP*, No. 2:18-cv-02586JPMCGC, 2020 WL 4717910, at *9 (W.D. Tenn. Aug. 13, 2020) (rejecting plaintiff's assertion that employer's "failure to provide overtime compensation qualifies as a common theory of FLSA violations").

At the notice or conditional certification stage, Plaintiff must present a "modest factual showing" that she is similarly situated to the individuals she seeks to notify. *Church v. The Pine Club, LLC*, No. 3:20-cv-135, 2021 WL 2980312, at *3 (S.D. Ohio July 15, 2021) (Rice, J.). Vague, conclusory allegations do not suffice; Plaintiff must present some evidence to establish a colorable basis for a claim that a class of similarly situated individuals actually exists. *Id.*

---

[3] *See, e.g.*, *Zavala v. WalMart Stores, Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) ("Being similarly situated does not mean simply sharing a common status . . . . Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."); *Emonds*, 2020 WL 5993908, at *5 ("[W]hile review is lenient for preliminary certification, [the plaintiff's] allegations must still be of a nature that shows the proposed collective to be similarly situated with regard to the alleged FLSA-violating behavior." (emphasis added)); *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *6 (S.D.N.Y. Jan. 4, 2016) ("[F]or purposes of determining the viability of a collective for which conditional certification is sought, the relevant practice that binds FLSA plaintiffs together must be the one that is alleged to have violated the statute itself." (internal quotation marks omitted)).

Though lenient, this is not a toothless standard. To the contrary, "because of the potential for abuse, the court must be careful to guard against the 'stirring up' of litigation through unwarranted solicitation." *Id.* ; *accord Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009 (court "has a responsibility to assure that there is some factual basis for plaintiffs' claims of [classwide FLSA violations] before" approving issuance of notice).

Further, when the plaintiff has had the opportunity to conduct discovery before moving for conditional certification—as Plaintiff has here—courts routinely impose a higher "modest-plus" standard before issuing notice. *See, e.g.*, *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823-27 (N.D. Ohio 2011) (citing and discussing cases); *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 895 (S.D. Ohio 2018); *Boyd v. Schwebel Baking Co.*, No. 4:15-CV-871, 2016 WL 3555351, at *4 (N.D. Ohio June 30, 2016). This "elevated factual showing," *Hall*, 299 F. Supp. 3d at 895, requires proof "beyond the[] [plaintiff's] allegations that would tend to make it more likely that a class of similarly situated employees exists," *Creely*, 789 F. Supp. 2d at 827. "Under this standard, the Court may consider evidence from all parties." *Godsey v. Airstream, Inc.*, 3:19-cv-107, 2020 WL 502550, at *3 (S.D. Ohio Jan. 31, 2020).[4]

## ARGUMENT

## I.   PLAINTIFF IS NOT ENTITLED TO CONDITIONAL CERTIFICATION

When evaluating a motion for conditional certification, courts consider whether there is evidence of a widespread policy that violates the FLSA, whether other potential plaintiffs have submitted declarations or otherwise been identified, and whether the putative collective action is

---

[4] If Plaintiff argues she has not had the chance to take additional discovery, her Rule 56(d) opposition to FedEx Ground's summary judgment motion against her was filed in January 2021 (Pl.'s Resp. in Opp'n to Def.'s Mot. For Partial Summ. J., ECF 13), and she has done nothing since that time to take discovery related to the issues raised in FedEx Ground's motion, including, importantly, vehicle weight data.

manageable. *Church*, 2021 WL 2980312, at *5; *Godsey*, 2020 WL 502550, at *2. Plaintiff fails

to satisfy her burden whether analyzed under the modest or the modest-plus standard.

### A.   Putative Class Members' Claims Are Not Unified by a Common FLSA-Violating Policy or a Common Theory of FLSA Violations

The existence of a common FLSA-violating policy, though not always required, is a

material factor supporting the rationale of collective actions (i.e., judicial efficiency), and courts

often deny conditional certification absent proof of such a policy. *See, e.g., Gallagher v. Gen.*

*Motors. Co.*, No. 19-11836, 2020 WL 3481649, at *12 (E.D. Mich. June 26, 2020) (finding that

"[f]actors district courts weigh in deciding motions for conditional certification," including the

lack of "evidence of a widespread policy of overtime violations," favored denial of conditional

certification).[5] "A common policy is particularly relevant" when, as here, putative class members

are directly employed by different entities (e.g., Service Providers) that contract with an alleged

joint employer (e.g., alleged to be FedEx Ground here). *See Gibbs v. MLK Express Servs., LLC*,

No. 2:18-cv-434FTMM38MRM, 2019 WL 2635746, at *6-8 (M.D. Fla. June 27, 2019) (denying

conditional certification when plaintiff's "evidence does not show [alleged joint employer]

engaged in, or has control of, any common payment policy or plan [that] violates the FLSA").[6]

---

[5] *See also, e.g., Church*, 2021 WL 2980312, at *6 (absent evidence "to support a finding that Defendant had a <u>policy</u> of taking a tip credit without complying with the [FLSA's] notice provision, Plaintiff is unable to satisfy her burden of making even a 'modest factual showing' that she is similarly situated to the other tipped servers" (emphasis by court)); *Rosales v. El Michoacana LLC*, No. 15-CV 711-FTM-38CM, 2016 WL 7093432, at *3 (M.D. Fla. Oct. 20, 2016) (though not required, "the existence of [a common] policy or plan is relevant to the Court's exercise of discretion in granting conditional certification in order to satisfy the rationale of a collective action, which is to preserve judicial economy").

[6] *See also Emonds*, 2020 WL 5993908, at *4-6 ("[Plaintiff's] failure to allege a common plan or policy across [direct employers] nationwide to deny overtime pay leads the court to conclude that [plaintiff] has not met the preliminary certification requirement . . . ."); *Nelson v. FedEx Ground Package Sys., Inc.*, No. 18-cv-01378-RM-NYW, 2018 WL 6715897, at *5-6 (D. Colo. Dec. 21, 2018) (discussing cases and denying conditional certification in the absence of any evidence that FedEx Ground "dictates the compensation scheme of" Service Providers), *R & R adopted*, 2019

Plaintiff does not provide even minimal evidence that members of the putative class were subject to any common policy or practice that produced the FLSA violations she alleges.

        1.      **Plaintiff does not show, and the evidentiary record refutes, the existence of any commonly-applicable compensation policy.**

Plaintiff offers no evidence of any compensation policy applicable to all putative class members. Both Plaintiff and Venable claim their Service Providers paid them a flat daily rate without overtime pay. (Oglesby Decl. ¶ 12; Venable Decl. ¶ 13.) They also claim other, unknown drivers told them their (also unknown) Service Providers paid them in the same way and that they did not receive overtime pay. (Oglesby Decl. ¶ 15; Venable Decl. ¶ 15.) But while they attest to a purported common FLSA violation—failure to pay overtime—they do not allege those violations arose from any common source or pay policy that violates the FLSA, whether implemented by FedEx Ground or any other entity. Both admit they (and other drivers) were paid by their various Service Providers, not FedEx Ground, and neither provides any evidence that FedEx Ground directed their Service Providers' pay policies (nor can they, because such a claim has no basis in fact). (Oglesby Decl. ¶ 7; Venable Dec. ¶ 7.) Plaintiff admitted that her Service Providers decided how to pay her and how much, and that she had no factual basis for assuming that FedEx Ground directed these decisions. (Oglesby Dep. 92, 284.) Further, Plaintiff's and Venable's vague,

---

WL 1437765, at *4-5 (D. Colo. Feb. 8, 2019); *Martin*, 2016 WL 30334, at *6-11 (declining conditional certification against putative joint employer when evidence showed that compensation decisions rested with plaintiff's direct employer and plaintiff did not "make any concrete factual allegations to the effect that . . . the wage, hour, and classification practices that they protest were imposed by, or derived from, [putative joint employer] itself"); *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 878-80 (E.D. La. 2008) (declining conditional certification against putative joint employer when plaintiffs did not show they "were together a part of a common policy, plan, or decision implemented by [defendant and putative joint employer] that violated the law"); *cf. Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) ("If much of the unlawful conduct was committed by small, individual companies who were later acquired by defendant, then plaintiffs who worked for these separate entities are not related as victims of a uniform, national policy.").

generalized statements about other drivers' pay are insufficient evidence that overtime violations even occurred, let alone that such violations are the product of a common policy or practice. (*See* Argument § B.1, *infra*.) Thus, Plaintiff fails to offer even a modest factual showing (much less a modest-plus showing) that she and other drivers are similarly situated "with respect to FedEx's payroll policies and practices." (Mot. 3.)

FedEx Ground's evidence reinforces this conclusion. Per FedEx Ground's contracts with Service Providers, each individual Service Provider has full discretion in setting compensation for the drivers it employs. (Randolph Decl. ¶¶ 17-18.) And as numerous Service Providers attest, FedEx Ground has no involvement in these decisions. (Williams Decl. ¶ 7; Ball Decl. ¶ 10; Cowdery Decl. ¶ 4-5; Smart Decl. ¶ 6-7.)

Moreover, Service Providers pay drivers in a variety of ways, which shows there is no common pay policy or method even among Service Providers. The FLSA does not require that employers pay non-exempt employees on an hourly basis, as Plaintiff seems to suggest. (*See* Mot. 11.) To the contrary, the FLSA allows employers to pay non-exempt employees on an hourly basis, 29 C.F.R. § 778.110; a salaried basis, *id.* § 778.113; a piece-rate basis, *id.* § 778.111(a); a piece-rate basis with a guaranteed minimum hourly rate, *id.* § 778.111(b); on a day or job basis, *id.* § 778.112; or under a "fluctuating work week" methodology, *id.* § 778.114. Different standards for determining overtime pay apply to each of these methods. *See generally* 29 C.F.R. Part 778.

Some Service Providers pay drivers on an hourly basis, with time-and-a-half for all overtime hours. (Ferrante Decl. ¶¶ 8-9; Smith Decl. ¶¶ 7, 9; Smart Decl. ¶¶ 7-8.) Some use different compensation methods for different drivers, depending on the size of the vehicle used and other factors. (Ferrante Decl. ¶¶ 8-9 (light vehicle drivers paid an hourly rate, while heavy vehicle drivers are paid an hourly rate or a day rate); Williams Decl. ¶¶ 8-9 (different pay

structures for different regions); Cowdery Decl. ¶ 9 (pays overtime to light vehicle drivers).)
While some Service Providers pay a flat day rate, these practices reflect their own variations.
(Cowdery Decl. ¶ 9 (pays day rate plus a piece-rate incentive bonus).) And payment of a flat day
rate is not indicative of a failure to pay overtime, as Service Providers may pay drivers a flat day
rate <u>and</u> overtime (*id.* ¶¶ 6-7). *See, e.g.*, 29 C.F.R. § 778.113 (permitting salaried basis).

Plaintiff cannot show that all drivers employed by all Service Providers in Ohio are subject
to the same pay policy that produced the FLSA violations they individually allege. Conditional
certification should be denied on that basis alone. *See Gibbs*, 2019 WL 2635746, at *7-8 (denying
conditional certification because evidence showing "broad discrepancies" in how direct employers
paid their drivers "undercuts [plaintiff's] assertion that he has satisfied his burden by alleging a
common theory of liability against [alleged joint employer]"); *Brooks v. A Rainaldi Plumbing,
Inc.*, No. 606CV-631ORL-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) (denying
conditional certification when employees worked "for different companies, in different positions,
under different compensation structures" because if they "were to be considered 'similar' under
[the] FLSA, it is difficult to ascertain a group of individuals that would be dissimilar").

> ### 2.  FedEx Ground's Service Provider business model does not provide a common theory of FLSA violations.

In the absence of any universal compensation policy, Plaintiff argues conditional
certification is warranted because FedEx Ground "instituted a company-wide misclassification
practice" by contracting with Service Providers for pickup and delivery services while (allegedly)
retaining sufficient control over drivers to qualify as their (joint) employer. (Mot. 11.) What
Plaintiff describes, however, is not a "misclassification" theory at all. Plaintiff does not claim
FedEx Ground misclassified drivers as independent contractors when they were really employees;
there is no question that Plaintiff was classified as an employee by her Service Provider, as were

other drivers. (*See* Mot. 6.) Instead, Plaintiff argues that FedEx Ground is an <u>additional</u>, joint employer with her Service Provider. The distinction is critical: while misclassifying an employee as an independent contractor may itself give rise to an FLSA violation, the mere status of being a joint employer does not. A finding that FedEx Ground is a joint employer would mean only that it <u>could</u> be liable for a Service Provider's FLSA violation, <u>if such a violation occurred</u>.

Plaintiff's approach suffers from a fundamental flaw. While the Sixth Circuit recognizes that employees may be similarly situated when their "claims [are] unified by common theories of <u>defendants' statutory violations</u>," *O'Brien*, 575 F.3d at 585 (emphasis added), that is not what Plaintiff proposes. Instead, according to Plaintiff, it is enough to allege that FedEx Ground is the drivers' joint employer because (she says) it controls their working conditions—albeit <u>not</u> their pay—and, separately, that she and other drivers were paid a flat day rate without overtime by different Service Providers. (Mot. 11-12.) But joint employment is a status, not an FLSA violation. Plaintiff's reliance on alleged joint employment as the unifying theory falls short because it is <u>not</u> a unifying theory of <u>FLSA violations</u>. Rather, it is just a claim that a single entity could be liable for disparate FLSA violations at the hands of various independent actors.

Numerous courts have rejected this argument, finding that a joint-employer theory cannot unify employees' FLSA claims—or make them similarly situated—without a common thread tying the alleged FLSA <u>violations</u> together. *See Emonds*, 2020 WL 5993908, at *3-6; *Gibbs*, 2019 WL 2635746, at *1-8; *Nelson*, 2018 WL 6715897, at *5-8; *cf. Zavala*, 691 F.3d at 537-38 (affirming decertification because alleged "common links" related to plaintiffs' joint-employer allegations "are of minimal utility in streamlining the resolution" of FLSA claims). Indeed, a number of recent decisions in similar cases brought against FedEx Ground (and decided <u>after</u> *Sullivan-Blake* and *Roy*, discussed below) confirm that Plaintiff's attempt to rely on a purportedly "unifying" joint

11

employment theory, or even misclassification, does not suffice to get her past the insurmountable varied questions about whether there were overtime violations, which are dependent on analysis of each Service Provider's pay practices. *See Corley v. FedEx Ground Package Sys., Inc.*, No. 5:19-cv-00429ODWSHKX, 2022 WL 1805435, *1, *5-9 (C.D. Cal. June 2, 2022); *Overpeck v. FedEx Corp.*, No. 18-cv-07553-PJH, 2022 WL 888441, *1, *11 (N.D. Cal. Mar. 25, 2022); *Hinds v. FedEx Ground Package Sys., Inc.*, No. 18-cv-01431-JSW, 2021 WL 4926980, *1-2, *8-10 (N.D. Cal. Aug. 18, 2021); *cf.* Order Denying Mot. for Class Cert. 4-8, *Lightfoot v. Wahoo Logistics, Inc.*, No. FCS050578 (Cal. Super. Ct. (Solano Cnty.) Feb. 2, 2022) ("The evidence before the court does not show that [FedEx Ground] exercised common control over the wages, hours, or working details or conditions of drivers, or that it suffered or permitted any driver to work.") (attached to Scott Decl. as Ex. 9).[7]

*Gibbs* and *Emonds* are particularly instructive here. In both cases, drivers employed by businesses that contracted with Amazon to provide delivery services sued Amazon for unpaid overtime, alleging Amazon was their joint employer. *Emonds*, 2020 WL 5993908, at *1-2; *Gibbs*, 2019 WL 2635746, at *1. The plaintiffs in both cases alleged their direct employers paid them flat rates without overtime pay and that drivers were similarly situated because Amazon exerted control over various aspects of their work (but not their pay). *Emonds*, 2020 WL 5993908, at *1-3; *Gibbs*, 2019 WL 2635746, at *1-2. Both courts denied conditional certification because the drivers did not provide even minimal evidence showing that Amazon set or influenced the drivers' pay. *Emonds*, 2020 WL 5993908, at *4-6; *Gibbs*, 2019 WL 2635746, at *5-8. As the *Emonds* court explained, the drivers' joint-employment allegations were not enough to overcome that failing:

---

[7] Although these are decisions under Rule 23, the point remains the same—there is no FedEx Ground practice that could show a statutory violation by FedEx Ground.

> [Plaintiff] points to a number of Amazon [] policies that could support a finding
> that Amazon is a joint employer for the [drivers]. However, the FLSA does not
> bar Amazon from being a joint employer, and [plaintiff] does not allege that
> Amazon violated the FLSA by acting as a joint employer. Instead, [plaintiff]
> alleges that Amazon violated the FLSA by failing to pay overtime to [the drivers].
> Thus, even if the court were to credit [plaintiff's] claims that Amazon acted as a
> joint employer for the [drivers] in the proposed collective, [plaintiff] must plausibly
> allege a material similarity among the potential plaintiffs <u>with regard to the denial
> of overtime payment beyond Amazon's alleged status as their joint employer</u>.

*Emonds*, 2020 WL 5993908, at *5 (emphasis added).

This case is no different. FedEx Ground's decision to contract with Service Providers for pickup and delivery services does not support conditional certification any more than would its decision to directly hire its own employees to provide such services. Neither decision violates the FLSA. Nor does Plaintiff allege that FedEx Ground's policy of contracting with Service Providers somehow negates those entities' discretion over drivers' pay or otherwise causes them not to pay overtime. As in both *Emonds* and *Gibbs*, "even if the Court ultimately determined [FedEx Ground] is a joint employer, it would <u>still need to examine every [Service Provider's] payment scheme individually for FLSA violations</u>." *See Gibbs*, 2020 WL 2635746, at *8 (emphasis added); *cf. Hinds*, 2021 WL 4926980, at *10 ([E]ven assuming Plaintiffs could establish FedEx was a joint employer, the Court concludes that in order to determine FedEx's liability for the alleged violations, a fact finder would be required to consider whether a putative class member worked for [a Service Provider] that paid overtime."). As a result, Plaintiff's joint-employer allegations do not make the putative collective similarly situated with respect to the alleged FLSA violation (the failure to pay overtime), and therefore cannot support conditional certification.

Plaintiff may cite two cases involving FedEx Ground in support of arguing that her joint-employer allegations are sufficient to satisfy her burden on conditional certification: *Sullivan-Blake v. FedEx Ground Package System, Inc.*, No. CV18-1698, 2019 WL 4750141 (W.D. Pa. Sept. 30, 2019) (now known as *Claiborne*), and *Roy v. FedEx Ground Package System, Inc.*, 353

F. Supp. 3d 43 (D. Mass. 2018). Neither decision should be followed here.

First, *Roy* and *Sullivan-Blake* are poorly reasoned, with *Sullivan-Blake* essentially rubber-stamping *Roy*. In focusing solely on the plaintiffs' joint-employer allegations—and not the plaintiffs' failure to even allege a common source of the FLSA violations at issue—both decisions reflect the same analytical flaw discussed above: they conflated two distinct concepts—one bearing on a unifying theory of FLSA violations (e.g., a common FLSA-violating practice) and the other bearing solely on who could be held liable for an FLSA violation if it occurred (i.e., whether FedEx Ground is a joint employer). *See Sullivan-Blake*, 2019 WL 4750141, at *3-4; *Roy*, 353 F. Supp. 3d at 68-71. As a result, both courts improperly disregarded the need for even minimal proof of some tether that tied the alleged FLSA <u>violations</u> together in the first instance.

Moreover, *Sullivan-Blake* ignored the intervening decision in *Nelson*, which distinguished *Roy* and denied conditional certification of a putative collective of Colorado drivers. *Nelson*, 2018 WL 6715897, at *5-8. The *Nelson* court rightly declined to certify that collective because the plaintiff did not allege that FedEx Ground had any "role in [Service Provider] compensation actions, policies or plans, i.e., <u>the putative FLSA violation</u>" but, instead, alleged only "that FedEx exercises substantial control over the day-to-day operations of the [Service Providers]." *Id.* at *8 (emphasis added); *accord Nelson*, 2019 WL 1437765, at *4 ("general allegations that putative class members worked long hours and were not paid overtime wages are not sufficient to support conditional certification"). *Sullivan-Blake* did not mention *Nelson*, let alone analyze or distinguish it, and yet, without any reasoning, it included Colorado drivers in the conditionally certified collective despite *Nelson*'s prior rejection of that very collective. 2019 WL 4750141, at *4-5.

Second, *Roy* and *Sullivan-Blake* are procedurally distinguishable because both conditional certification motions were decided before any discovery had occurred. (Scott Decl. ¶¶ 5, 18.) As

a result, both courts refused to consider evidence disproving—or even the plaintiffs' failure to allege—the existence of any common pay plan. *Sullivan-Blake*, 2019 WL 4750141, at *4; *Roy*, 353 F. Supp. 3d at 69. Both courts accepted, without probing, the named plaintiffs' attestations (two in each case) that they were denied overtime and that other, unnamed drivers "told" them the same. *Id.* at *2, 4; *accord Roy*, 353 F. Supp. 3d at 66, 70-71 (crediting plaintiffs' "averments that 'many' drivers" whom they talked to did not receive overtime" (quoting declarations)). Both courts reasoned that whether a common FLSA-violating pay policy unified drivers' claims concerned the merits of whether the collective was "similarly situated," an inquiry both said should be addressed solely at the second certification stage. *Id.* at *4; *Roy*, 353 F. Supp. 3d at 69. But, in this Circuit, district courts do not credit vague statements about what declarants were told, as the *Sullivan-Blake* and *Roy* courts did. (*See* Argument § B.1, *infra*.) And, here, the first-stage inquiry the Court must make is whether Plaintiff has made a "modest factual showing" that <u>she is similarly situated</u> to members of the putative collective. (*See* Legal Standard, *supra*.) Still further, the parties have engaged in discovery here, so that the higher, modest-plus standard applies. Thus, this Court should consider both parties' evidence to determine whether conditional certification is warranted.

### B. Plaintiff Offers Insufficient Evidence of Alleged FLSA Violations to Justify the Issuance of Notice to Other Drivers

Plaintiff also fails to present even a modest factual showing of widespread FLSA violations among various Service Providers in Ohio, much less the elevated factual showing needed to satisfy the modest-plus standard she must satisfy here. And Plaintiff's claims of "company-wide" policies unrelated to pay are not only irrelevant for the reasons just discussed (i.e., they show no "violation" of anything), but they also are unsubstantiated.

#### 1. Plaintiff does not present evidence of widespread overtime violations.

Plaintiff offers two declarations—her own and putative opt-in Plaintiff Venable's—as

evidence that members of the putative statewide collective were denied overtime pay. But the only concrete allegations they attest to are that they were paid a flat day rate without overtime by the few Service Providers—they identify five of the 162 Service Providers in Ohio—for whom they worked. (Oglesby Dec. ¶¶ 8-10; Venable Dec. ¶¶ 8-11.) And the evidence shows that for large periods of time (if not the majority) neither even qualified for overtime pay. (*See* Kernan Decl. ¶ 21 & Ex. 5; Mot. for Partial Summ. J. 5-6, ECF 11 (explaining overtime exemption).)

As to other drivers, Plaintiff and Venable say only that they "spoke with many" other drivers at the Vandalia and Miamisburg Terminals—two of 17 in Ohio—who were employed by other, unspecified Service Providers and who "reported" that they, too, were paid a flat day rate without overtime pay. (Oglesby Dec. ¶ 15; Venable Dec. ¶ 15.) But specifically, Plaintiff identifies only Venable and two other individuals whose last names (and Service Providers) she does not provide. (Oglesby Dec. ¶ 15.) Venable identifies only Plaintiff. (Venable Dec. ¶ 15.)

Both declarations are, on their face, insufficient to satisfy Plaintiff's burden. Neither offers a factual basis for establishing they have personal knowledge of what other, unidentified Service Providers paid their drivers; instead, they rely solely on what other drivers supposedly told them. Thus, "Plaintiff's statement about what those other [drivers] told her," as well as Venable's, "is inadmissible hearsay" that "cannot be considered in evaluating her motion for conditional certification." *See Church*, 2021 WL 2980312, at *5; *accord Pacheco*, 671 F. Supp. 2d at 964.

Moreover, the very nature of the overtime inquiry in this context shows the inadequacy of Plaintiff's and Venable's declarations. Only those drivers who operate small vehicles are even eligible for overtime under the FLSA. (Mot. for Partial Summ. J. 7-11 (explaining exception to overtime exemption).) To reiterate, simply stating that a driver worked overtime hours and was not paid overtime does not suffice even for an allegation of a wage violation because there is no

16

violation as a matter of law if the driver was in an overtime-exempt heavy vehicle at the time.

Although Plaintiff and Venable attest that they "often" drove small vehicles, they do not clarify when they drove light vehicles and whether they worked more than 40 hours during the weeks in which they did drive light vehicles. And the evidence shows that Plaintiff drove primarily heavy vehicles when working for one of her Service Providers, Fast Ball Trucking, and that she did not work overtime in the two weeks she drove a light vehicle when employed by that Service Provider. (Mot. for Partial Summ. J. 4, ¶ 17, ECF 11; Ball Decl. ¶ 4-5, 7.)

As to the vehicles used by other drivers, Oglesby and Venable provide no information at all. Nor do they, or could they, allege that all drivers employed by Service Providers operate small vehicles. Service Providers decide what types of vehicles they will use and who is assigned to any particular vehicle, and they may use all heavy vehicles (those weighing 10,001 pounds or more) or a mixed fleet. (Ferrante Decl. ¶ 7; Williams Decl. ¶ 5; Cowdery Decl. ¶ 7.) Thus, absent knowledge of what size vehicle a driver operates, that drivers told Plaintiff or Venable they did not receive overtime is meaningless, especially because many Service Providers may pay small- and heavy-vehicle drivers differently. (Ferrante Decl. ¶¶ 8-9.)

The evidence Plaintiff offers is, therefore, insufficient to warrant conditional certification of the statewide collective—or any collective—that she seeks to certify. *See Hodzic v. FedEx Ground Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) (declining to conditionally certify nationwide collective action when plaintiffs offered two declarations regarding practices at one terminal).

### 2. Plaintiff lacks personal knowledge to substantiate her claims of other purported FedEx Ground policies.

Citing to Plaintiff's and Venable's near-uniform declarations, Plaintiff purports to offer evidence that FedEx Ground has "company-wide policies" through which it required drivers to

adhere "to schedules that FedEx set" and "to routes assigned to them by FedEx," "to deliver packages assigned to them by FedEx," and "to use the scanners and special codes provided by FedEx" when delivering packages. (Mot. 11-12; *accord* Oglesby Decl. ¶¶ 16-21; Venable Decl. ¶¶ 17-22.) Even if these alleged "policies" were enough to provide a unified theory binding the putative collective's FLSA claims together (they are not), conditional certification should still be denied because neither Plaintiff proffers adequate evidence to show that such policies even exist. In particular, neither declarant provides any factual basis from which to infer that she has personal knowledge to attest that these circumstances reflect <u>FedEx Ground</u> policies or directives—as opposed to the policies, directives, or agreements of each individual Service Provider, as Service Provider owners have attested. (Ferrante Decl. ¶ 2; Smith Decl. ¶ 2; Cowdery Decl. ¶ 2.)

Plaintiff's own deposition reveals why: these assertions are either incorrect or based on speculation.[8] Plaintiff testified at her deposition that her Service Provider told her when to arrive at the terminal in the mornings and that she never spoke to anyone at FedEx Ground about when she needed to arrive. (*Compare* Oglesby Dep. 70:1-17, 101:19-103:1, *with* Oglesby Decl. ¶ 18.) Her testimony also shows she has no basis for claiming that FedEx Ground set her schedule or that they assigned her routes. (*Compare* Oglesby Dep. 291:19-293:14, 276:2-278:10, 283:3-8, *with* Oglesby Decl. ¶¶ 18-19.) And she conceded FedEx Ground did not "assign" her any packages. (*Compare* Oglesby Dep. 349:21-24, *with* Oglesby Decl. ¶ 20.)

FedEx Ground's evidence confirms that these so-called "company-wide" policies are not

---

[8] Plaintiff's deposition testimony contradicts numerous assertions in her declaration or otherwise shows she does not have personal knowledge to attest to the so-called facts she alleges. Exhibit L identifies these discrepancies, which provide still further grounds for disregarding this "evidence." *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (D. Mass. 2018); *cf. Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021) (stating that a court "should not consider" an affidavit that directly contradicts the nonmoving party's "prior sworn testimony," when considering summary judgment).

FedEx Ground policies, directives, or decisions at all. Under their agreements with FedEx Ground—about which Plaintiff admits she knows nothing (Oglesby Dep. 32:13-33:5, 35:17-21, 264:3-6)—Service Providers agree to provide certain services to FedEx Ground. But they retain full discretion to run their businesses as they wish. Thus, Service Providers set drivers' schedules, configure and assign drivers' routes, determine which vehicle they will drive, and decide how many packages they agree to deliver. (*See* Facts § I, *supra*.) And while Service Providers may direct their drivers to use hand-held scanners to provide certain information regarding package pickup and delivery, that is because the Service Provider has agreed to provide such services to FedEx Ground's customers. (Randolph Dep. 106:11-14, 112:11-21, 114:11-13, 115:18-23.)

Plaintiff's declarations are thus not sufficient to provide a modest factual showing that these alleged "company-wide" policies exist. *White*, 236 F.R.D. at 369 ("[A]ffidavits submitted at the notice stage must be based on the personal knowledge of the affiant.").

### C.     Plaintiff's Proposed Collective Action Is Not Manageable

The purpose of an FLSA collective action is "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Courts, therefore, deny conditional certification when it is apparent that both the size of, and dissimilarities within, the putative collective render collective adjudication of FLSA claims unmanageable.[9] "[I]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the

---

[9] *See Lockhart*, 2020 WL 4717910, at *9 (denying conditional certification because "[t]he efficiencies gained by collective actions would . . . be lost if the Court were to allow all individuals who suffered FLSA violations at the hands of [their employer] to join in a collective action on the sole basis" that they were denied overtime pay); *Gallagher*, 2020 WL 3481649, at *12 (denying conditional certification when "work environments are too diverse and contract work too different to have a manageable class" (internal quotation marks omitted)).

matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

Plaintiff's proposed collective is unmanageable. First, FedEx Ground does not have information about drivers' pay or hours worked, and it has incomplete information concerning vehicle weight. (Scott Decl. ¶ 7; Randolph Decl. ¶ 17.) This information must be obtained from over 150 Service Providers to determine such material issues as how drivers are paid, whether they worked overtime hours, and whether drivers drove light vehicles if and when they worked those hours. Thus, immense third-party discovery is necessary to even identify who satisfies the definition of the proposed collective—which Plaintiff defines as a failsafe collective of "Small Vehicle Drivers" who were not paid overtime for hours worked over 40 in a workweek (Mot. 8). And in FedEx Ground's experience, obtaining that discovery—if it is still available—is a slow and difficult process that, coupled with other hurdles, has prolonged discovery <u>for years</u> in both *Roy* and *Sullivan-Blake*. (Scott Decl. ¶¶ 10, 24-25.)

As just one example, because FedEx Ground lacks this information, notice of both collective actions went to an overbroad group of drivers that includes all drivers for whom FedEx Ground has missing vehicle weight data (as would be necessary here). That circumstance has caused discovery to take exponentially longer due to the need to attempt to cull out hundreds (in *Roy*) and thousands (in *Sullivan-Blake*) of drivers that do not belong in either collective because they never actually drove light vehicles. (Scott Decl. ¶ 11.)

And, second, the legal issues involved in this case—joint employment and whether drivers were entitled to but did not receive overtime pay—cannot be resolved collectively, as courts have recognized. *See Gallagher*, 2020 WL 3481649, at *12 (proposed collective was unmanageable because "[t]he parties and the Court would be required to sort through and decide

which [opt-in plaintiffs] were denied overtime pay, which [opt-in plaintiffs] are 'employees,' and which [opt-in plaintiffs] are non-exempt, to name three major issues with [plaintiff's] case"); *Gibbs*, 2019 WL 2635746, at \*9 ("[T]he Court agrees . . . joint employer issues will destroy judicial economy of the [proposed collective], which consists of an unknown number of [direct employers] separately employing a vast number of [drivers] and contracting with Amazon."). In fact, these very issues have prompted decertification of collective actions in the joint-employment context. *See Zavala v. Wal-Mart Stores, Inc.*, No. CIV.A. 03-5309 (GEB), 2010 WL 2652510, at \*5 (D.N.J. June 25, 2010), *aff'd*, 691 F.3d 527 (3d Cir. 2012) (concluding, in joint-employment case concerning alleged FLSA violations, that "fairness and procedural considerations weigh against a collective action" due to "the numerous different store locations at issue in this case[,] . . . the numerous contractors utilized at the different locations . . . , [and] the disparities between the employment conditions and practices of those contractors").

The uniform denial of Rule 23 class certification in numerous cases against FedEx Ground—even after <u>years</u> of discovery where the plaintiffs were able to spend as much time and money as they desired to take extensive discovery on purportedly "common" issues—confirms that collectively litigating these issues is not manageable. *See Hinds*, 2021 WL 4926980, at \*1-2, \*8-10; *Overpeck*, 2022 WL 888441, at \*1, \*11. (Scott Decl. ¶ 32 (explaining that discovery in both *Hinds* and *Overpeck* began in 2018 and continued until class certification was briefed in 2021).)

FedEx Ground's experience in both *Roy* and *Sullivan-Blake* confirms that the putative collective's FLSA claims cannot be adjudicated on a representative basis, as needed to manage a large collective action. *Cf. Monroe v. FTS USA, LLC*, 860 F.3d 389, 409 (6th Cir. 2017) ("[T]he collective-action framework presumes that similarly situated employees are representative of each other and have the ability to proceed to trial collectively."). In both cases, after representing

21

to the courts that final certification could be decided on <u>representative</u> discovery of a small portion of opt-ins, the plaintiffs have more recently sought individualized discovery as to each member of the collectives—which prompted the *Sullivan-Blake* court to question why the case was a collective action in the first place: "what I'm getting at is why is this a collective? What is the point of doing it as a collective if we are going to conduct individual discovery as to every opt-in?" (Scott Decl. ¶¶ 27, 28 & Ex. 8.)

## II. PLAINTIFF'S PROPOSED FORM OF NOTICE AND PLAN FOR DISSEMINATION ARE IMPROPER AND UNWORKABLE

If the Court were to grant conditional certification, the Court should not adopt Plaintiff's proposed form of notice and opt-in form, or her plan for dissemination.

### A. The Proposed Collective Action Is Temporally Overbroad

Plaintiff proposes to send notice to all Ohio drivers who delivered FedEx Ground packages on behalf of a Service Provider during the "applicable statute of limitations period." (Mot. 8.) According to Plaintiff, that period is August 18, 2017, to the present. (Mot. 8, 16.) This proposed period is overly broad for two reasons.

First, it encompasses drivers who already opted-in, or had the opportunity to opt-in, to *Sullivan-Blake*.[10] Plaintiff's failure to propose any plan for addressing *Sullivan-Blake* raises the potential for duplicate opt-ins for the same period and competing collective actions that "threaten to present overlapping classes, multiple attempts at certification in [multiple jurisdictions], . . . complicated settlement negotiations," and, most significantly, conflicting outcomes. *See Ortiz v. Panera Bread Co.*, No. 1:10CV1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011); *see also*

---

[10] *Sullivan-Blake* covers the period of November 27, 2015, through August 14, 2020, when the opt-in period closed. (*Sullivan-Blake*, No. 2:18-cv-1698 (W.D. Pa.), Order Granting Mot. For Clarification, ECF 109; *Sullivan-Blake*, Joint Status Report, ECF 170 (¶ 2).)

*Alvarez v. Gold Belt, LLC*, No. CIV. 08-4871 NLH KMW, 2011 WL 1337457, at *1-2 (D.N.J. Apr. 7, 2011). The interests of judicial comity and efficiency thus call for limiting Plaintiff's putative collective to the period of August 14, 2020, to the present.

Second, the applicable limitations period is not two or three years before the filing of the complaint but, rather, two or three years before the date on which the Court approves notice. *Crescenzo v. O-Tex Pumping, LLC*, No. 15-cv-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016) ("Courts in the Sixth Circuit have found that class certification is appropriately limited to three years prior to the date of approval of the notice, and not the filing of the lawsuit.").

### B. Plaintiff's Plan for Immediate Dissemination of any Notice is Unworkable

Plaintiff demands that FedEx Ground be required to produce a list of putative collective action members—defined as drivers employed by Service Providers in Ohio and who drove small vehicles at any time from August 18, 2017, forward—and their contact information within seven days of an order granting conditional certification. FedEx Ground, however, does not have and cannot provide the requested information in that time frame.

FedEx Ground does not have sufficient information to identify drivers that meet Plaintiff's definition of the putative collective—drivers that are eligible for overtime, worked overtime, and were not paid overtime. (*See* Argument § I.C, *supra*.) FedEx Ground also lacks complete information on vehicle weights. (*Id.*) FedEx Ground relies on Service Providers to provide that information, and the information in FedEx Ground's possession is incomplete for a number of reasons, including that drivers' entries of incorrect vehicle numbers prevent the ability to locate weight information for those vehicles, and that Service Providers do not consistently enter weight information for their vehicles, so the information could be (and many times is) lacking even if the driver entered the correct vehicle number. (Scott Decl. ¶ 13.)

Setting aside these limitations, it would still take weeks to pull together information to

23

simply identify drivers that worked for Service Providers, even <u>without</u> attempting additional analysis on vehicle weights. In *Sullivan-Blake*, it took 16 weeks to compile a list of drivers employed by Service Providers nationwide, and could not include any analysis of vehicle weights due to the number of drivers. (*Id.* ¶ 21.) And in *Roy*, it took months to compile a list of drivers employed by Service Providers in Massachusetts that drove light vehicles (or those with an unknown weight) even just one day. (*Id.* ¶ 8.) The same will be true here.

### C.   Plaintiff's Proposed Form of Notice and Consent Form Are Improper

Plaintiff's notice and consent form are flawed. A class notice must: (1) be accurate; (2) notify potential plaintiffs of their obligations and duties if they join the lawsuit; and (3) be fair and impartial. *See Hoffmann-La Roche Inc.*, 493 U.S. at 168-69 (notice must be accurate and informative, and it must avoid suggesting court's approval of the suit on its merits); *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 693 (W.D. Ky. 2021) ("[T]he Notice must apprise opt-in plaintiffs of their potential responsibilities and liabilities if they decide to opt-in to this suit."). Plaintiff's proposed notice fails to meet these standards in the following material respects:

- The proposed notice does not clearly state the eligibility requirements for participating in this case as an opt-in plaintiff. As stated above, FedEx Ground does not have the ability to identify only those drivers who satisfy Plaintiff's definition of the collective. Instead, as was necessary in both *Sullivan-Blake* and *Roy*, notice would have to be sent to an overbroad group of drivers. To limit the number of ineligible drivers, the notice should advise putative opt-in plaintiffs they must meet the following criteria to participate: (1) the driver was not paid overtime; (2) they worked more than 40 hours in a week; and (3) the driver used a light vehicle during a week when he or she worked more than 40 hours. For the same reason, putative opt-in plaintiffs should be required to attest to this criteria under penalty of perjury in their opt-in consent forms. (*See* Scott Decl. ¶ 7.)

- The proposed notice incorrectly informs recipients that FedEx Ground's records identified that person as a driver that worked in a vehicle that weighed less than 10,001 pounds. As discussed above, FedEx Ground does not have this ability due to the number of unknown vehicle weights.

- The proposed notice's description of this lawsuit is confusing because it does not acknowledge Plaintiff's joint-employer theory and otherwise ignores the role of

Service Providers. (Mot., Ex. G.) In this regard, Plaintiff's proposed notice is inconsistent with her purportedly common theory of liability.[11]

- Plaintiff's proposed notice does not advise putative opt-in plaintiffs that Plaintiff has named her Service Provider as a defendant in this lawsuit, as it should. Instead, the notice falsely leaves out any reference to the presence of another defendant. That falsity must be corrected, and the notice must also inform putative opt-in plaintiffs that all implicated Service Providers similarly must be joined to the case.

- To maintain neutrality, the notice should not suggest (as it currently does) that: (1) Plaintiff was a "FedEx driver" or that putative class members "worked . . . for" FedEx Ground; (2) that FedEx Ground "required" drivers to work overtime; (3) that FedEx Ground "was not entitled to classify . . . drivers as exempt from the FLSA's overtime requirements"; and (4) "Federal law prohibits Defendant [FedEx Ground] from firing you or taking any adverse action against you because you decided to join the lawsuit.").[12] (Mot., Ex. G.) Although the proposed notice acknowledges that FedEx Ground disputes the allegation that it is the drivers' employer, this language nonetheless suggests that FedEx Ground acted as the drivers' employer. FedEx Ground disputes the legal conclusions imbedded in each of these statements and the notice must be revised to use only neutral language.

- The proposed notice fails to disclose that potential plaintiffs may be required to contribute towards payment of FedEx Ground's litigation costs should it prevail. *See York*, 524 F. Supp. 3d at 693 ("The inclusion of such a warning gives opt-in plaintiffs necessary information [] to make an informed decision about whether to opt-in as a plaintiff." (internal quotation marks omitted)).

Accordingly Plaintiff's proposed notice should not be approved in its current form.

Given these issues, if the Court concludes some form of collective-action notice should be issued, FedEx Ground requests a 30-day period in which to attempt to resolve these issues with opposing counsel or to propose an alternative form of notice and plan for dissemination.

---

[11] *Compare* Mot. 9, 11-12 (arguing FedEx Ground "instituted a company-wide misclassification practice" by failing to classify drivers "as employees" when it is allegedly a joint employer and, instead, "attempted to improperly subcontract out the responsibility to pay them wages"), *with* Mot., Ex. G (stating that "[t]he lawsuit is about whether drivers . . . [were] properly classified as exempt from the overtime requirements" of the FLSA and that "Defendant [FedEx Ground] was not entitled to classify such drivers as exempt from the FLSA's overtime requirements").

[12] FedEx Ground does not object to an anti-retaliation statement. But no such statement may suggest that <u>FedEx Ground</u>, as opposed to drivers' Service Provider employers, cannot "fire" drivers.

Dated: November 4, 2022            Respectfully submitted,

*/s/ Jessica G. Scott*
Joseph A. Farchione (0039199)
Jessica G. Scott (admitted *pro hac vice*)
David J. Schaller (admitted *pro hac vice*)
Natalie R. Colao (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone:    303.244.1800
Facsimile:     303.244.1879
Email:  farchione@wtotrial.com
       scott@wtotrial.com
       schaller@wtotrial.com
       colao@wtotrial.com

Attorneys for Defendant
FedEx Ground Package System, Inc.

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on November 4 2022, I electronically filed the foregoing **FEDEX GROUND'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **James L. Simon**
  james@simonsayspay.com

- **Clifford Bendau II**
  cliffordbendau@bendaulaw.com; cliff@bswages.com

- **Michael Fradin**
  mike@fradinlaw.com, mikefradin@gmail.com

- **Andy Vollmar**
  avollmar@bcvalaw.com

- **James Gerard Kordik**
  jkordik@rogersgreenberg.com

*/s/ Jessica G. Scott*